UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | CAUSE NO.: 1:17-cr-00172-001 |
| | ) | VSM #15989-028 |
| v. | ) | |
| | ) | **BEFORE THE HONORABLE** |
| THOMAS J. BUCK, | ) | **JAMES R. SWEENEY, II, JUDGE** |
| Defendant. | ) | **US DISTRICT COURT, SOUTHERN** |
| | ) | **DISTRICT OF INDIANA** |

## MOTION FOR COMPASSIONATE RELEASE OR PLACEMENT IN HOME CONFINEMENT

The Defendant, Thomas J. Buck ("Buck"), by his counsel, Patrick A. Shoulders, pursuant to the First Step Act of 2018, 18 U.S.C. §3582, the Second Chance Act, 34 U.S.C. §60541(g)(1)(c), the CARES Act and Directives issued by the United States Attorney General, moves the Court to grant him early, compassionate release from prison or, alternatively, to Order that Buck be placed in home confinement, upon the grounds that:

1. On February 13, 2019, this Court imposed its sentence on Buck committing him to the custody of the United States Bureau of Prisons for imprisonment of a term of up to 40 months. (Sentencing Order – Exhibit 1, Appendix). Buck began confinement on March 21, 2019. The BOP locator site reflects a release date of January 20, 2022. Buck will have served 50% of his sentence as of July, 2020 (*i.e.*, 17 months = one-half of 34; 34 months equals 85% of 40 months). He will also be within 18 months of release.

1

2. Buck is presently confined at the Federal Correctional Institution, Terre Haute, Indiana. Two of his adult children and his grandchildren reside in Indianapolis, Indiana. His wife of 35 years, Cathy, maintains an apartment in Indianapolis, Indiana along with the couple's permanent residence in Florida. When released, Buck will be transported by an adult daughter directly to his Indianapolis, Indiana apartment.

3. Buck, born January 16, 1954, is 66 years old. He pleaded guilty to "Securities Fraud", a non-violent offense. He has no other criminal record nor any history of violence. He poses no risk to any person or to the public. This Court recognized that Buck poses no threat when it recommended in its Sentencing Order that Buck be placed in "a facility as close as possible to Indianapolis, Indiana with the lowest security level possible."

4. While serving his sentence, Buck has never attempted escape, has no disciplinary infractions, and has, in fact, been a model prisoner making positive and constructive use of his time:

    A) Dog Program – Raising a puppy to be a service dog. The dog, Rocky, lives with Buck 24/7. No breaks and no days off. Rocky is his second puppy. He is a 7-month-old golden retriever.

    B) Unicor: Buck is the clerk/orderly for the purchasing offices of Unicor for 15 Unicor facilities nationwide. He does this from 11:00 a.m. to 2:00 p.m. while Rocky naps. Buck is the only person with both a dog and Unicor responsibilities.

    C) Programming classes taken:

        (i) Relationships: March to May, 2019

    (ii)    Parenting I:  November-December, 2019

    (iii)    US History:  May – July, 2019

    (iv)    Residential re-entry:  August, 2019

    (v)    Personal Healthcare:  September, 2019

    (vi)    Music Appreciation:  August – October, 2019

    (vii)    Public Speaking:  May – August, 2019

    (viii)    Walking Fitness:  March 2019 – Present

    (ix)    Yoga:  May 2019 – Present

    (x)    Nutrition:  August – November, 2019

    (xi)    Book Study on "What on Earth Am I Here For?" by Rick Warren:  September – December, 2019

    (xii)    Parenting II:  January 2020 – Present

    (xiii)    Horticulture:  January 2020 – Present

    (xiv)    Bible Study Classes

5.    In addition to his age (66), Buck has a chronic history of asthma and pulmonary issues. He has been treated for suspected bronchitis, has had a selective acquired IgM deficiency that has rendered him prone to repeated respiratory tract infections, and has undergone exploratory thoracotomy for granuloma. In sum, as stated by Buck's long-time treating physician:

> "The above issues place him [Buck] at greater risk for pulmonary complications if he were to contract COVID-19. The fact that he is over 60 years of age places him at some risk. It would be most beneficial for Mr. Buck to be separated from any excessive exposure to COVID-19."

(Medical opinions, health records – Exhibit 2 – Appendix)

6. With the onslaught of the Coronavirus, public health officials and US Government Officers quickly recognized that correctional and detention facilities face critical challenges in controlling the spread of infectious diseases because of crowded, shared environments and potential introductions by staff members and new inmates. In its Morbidity and Mortality Weekly Report of May 6, 2020, the Center for Disease Control reports that of 37 jurisdictions reporting, 32 (86%) reported at least one confirmed COVID-19 case among incarcerated or detained persons across 420 correctional and detention facilities. On April 29, 2020, the AP reported that "over 70% of tested inmates in Federal prisons have COVID-19." (Article by Michael Balsamo).

7. Recognizing that "No One Deserves to Die of COVID-19 in Jail" (New York Times editorial, April 23, 2020, copy attached along with other relevant news articles at Exhibit 6), the United States Attorney General, William Barr, at the bi-partisan urging of the US Senate, exercised authority granted him under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), Pub. L. 116-136. On March 26, 2020, and again on April 3, 2020, the AG issued "Memorandum for Director of Bureau of Prisons" which directed the BOP to both <u>prioritize</u> and <u>increase</u> the use of home confinement as an appropriate response to the COVID-19 pandemic. (AG and Senate Request Directives – Exhibit 3, Appendix).

The AG further directed the BOP to consider the totality of circumstances for each individual inmate, listing certain discretionary factors which included: The age and vulnerability of the inmate to COVID-19, the priority to be given to inmates

4

residing in minimum security facilities, the inmates conduct in prison, and the assessment of any danger posed by the inmate to the community. The length of time served was specifically omitted from consideration. (Exhibit 3 – AG's Memorandums and Senate Request).

8. Buck is 66 and vulnerable as demonstrated by medical history to respiratory disease - - the physical weakness which COVID-19 exploits. He is no threat and has served his time constructively and without incident in a minimum-security facility. Presumably, that is why Buck was informed by prison authorities within the past 30 days that he was being placed upon an immediate home confinement transfer list at the Terre Haute facility.

9. Seeking early release/home confinement, Buck and his undersigned counsel submitted a "Request for Immediate Transfer to Home Confinement" to the Administrator and Case Management Staff of the Federal Correctional Institute in Terre Haute, Indiana on April 9, 2020. A copy of same is attached (Exhibit 4, Appendix), along with documents evidencing delivery by FedEx on April 10 and a signed receipt for a certified mailed copy on April 14, 2020. More than thirty (30) days have elapsed since Buck's request. He has exhausted his administrative remedy and now seeks relief from this Court since the BOP has neither released nor transferred Buck to home confinement nor even responded to his request.

10. Perhaps the BOP's failure to act upon Buck's request is due to a purported "change in policy" requiring priority for prisoners who have completed 50% of their sentence or are within 18 months of release. (See Exhibit 5 – US Department

of Justice Memorandum – Appendix). If so, said refusal to release or transfer is arbitrary, capricious and ripe for this Court's consideration and intervention. COVID-19 is unconcerned with time served - - it will indiscriminately kill prisoners regardless of their sentence. Even under the arbitrary 50%/18 months left standard, Buck's release date will arrive July 20, 2020, a mere 90 days or less from now. Release which hinges upon "time served" rather than age and vulnerability to this disease is, by definition, arbitrary and without a basis in sound policy or compassion, and is devoid of a rationale grounded in an effort to protect the health and safety of staff and inmates.

11. Upon information and belief, at least one elderly inmate at the Terre Haute Facility was taken to the hospital for coughing and shortness of breath during April, 2020. Said prisoner was later placed in solitary confinement on or about April 28, 2020. Further information/diagnosis has not been provided. Additionally, the Terre Haute, Indiana Facility has **not** engaged in any widespread testing for the virus, is unable to implement appropriate "distancing" measures, and cannot furnish adequate sanitary, disinfected quarters. Finally, should critical medical care be required, the Terre Haute, Indiana BOP facility is simply ill-equipped and understaffed in the event of an outbreak. When Buck contracted a bronchial infection last Spring, he waited approximately one month for treatment!

12. Pursuant to the AG's Directives, the BOP management of the Terre Haute, Indiana facility have indeed released some inmates to home confinement. Some of these prisoners had served much less than 50% of their sentence – and some

had even had disciplinary incidents within 12 months prior to their release. Buck will have served more than 40% of his sentence and has had zero discipline by the time the Court considers this request. The failure to release/transfer Buck is inexplicable, arbitrary, and dangerously in denial of relevant facts and circumstances.

For all of the foregoing reasons, Buck, a 66-year-old model prisoner with a medical history rendering him particularly vulnerable to COVID-19, respectfully requests that this Court Order that he be compassionately released from prison confinement whereby he can begin performing community service, and/or that Buck be immediately transferred to home confinement, and that he be granted such other relief as is reasonable in the circumstances.

Respectfully submitted,

ZIEMER STAYMAN WEITZEL & SHOULDERS, LLP

By: _____
(Patrick A. Shoulders #308-82
20 NW First Street, 9th Floor
PO Box 916
Evansville, IN 47706-0916
Telephone: (812) 424-7575, Ext. 231
Fax: (812) 421-5089
pshoulders@zsws.com
Attorney for Defendant, Thomas J. Buck

## CERTIFICATE OF SERVICE

    I certify that on May 12, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system as well as via United States First Class Mail, Postage Prepaid, to the following:

Josh J. Minkler, United States Attorney
Southern District of Indiana
10 W. Market Street, Ste. 2100
Indianapolis, IN 46204

Robert W. Hammerle
Hackman Hulett, LLP
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN 46204

                                                Patrick A. Shoulders