UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cr-00172-JRS-TAB |
| | ) | |
| THOMAS J. BUCK, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Thomas Buck's Motion for Compassionate Release or Placement in Home Confinement, dkt. [88], filed pursuant to § 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018), which is codified at 18 U.S.C. § 3582(c)(1)(A). Mr. Buck seeks immediate release and the reduction of his sentence to time served. In the alternative, Mr. Buck asks to be placed on supervised release with home detention as a condition for the unserved portion of his sentence. Because Mr. Buck has not shown extraordinary and compelling reasons for a sentence reduction, the motion is **DENIED**.

## I.
### BACKGROUND

On September 6, 2017, Mr. Buck pleaded guilty to one count of securities fraud. Dkt. 7. He was sentenced on February 13, 2019. Dkts. 82, 83.

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared. Dkt. 41. The PSR stated that between 2012 and March 2015, Mr. Buck fraudulently purchased and sold securities while he was employed as a financial advisor with Merrill Lynch. *Id.* at 3. During that time, Mr. Buck repeatedly lied to his clients about how much they were paying in commissions, increased his commissions by making trades that his clients did not authorize, and intentionally

1

failed to inform clients about cheaper options for paying for his services. *Id.* at 3–5. The amount of loss was contested, but the Court found that Mr. Buck caused his clients more than $1.5 million in loss. Dkt. 82. Mr. Buck paid $5,091,637.14 in fines and restitution. *Id.*

The PSR shows that Mr. Buck has no criminal history. *Id.* at 10. Mr. Buck was assigned a criminal history score of zero and a criminal history category of I. *Id.*

The maximum sentence for securities fraud was 25 years. *Id.* at 16 (citing 18 U.S.C. § 1348). Based on a total offense level of 28 and a criminal history category of I, the guideline imprisonment range was 78 to 97 months. *Id.* The guideline term of supervised release was for not more than five years. *Id.* (citing 18 U.S.C. § 3583(b)(1)).

The Court sentenced Mr. Buck to 40 months and recommended that he be placed at a facility as close as possible to Indianapolis with the lowest security level possible. Dkt. 83. The Court imposed 2 years of supervised release. *Id.* The Court sentenced Mr. Buck below the guidelines on account of his age, lack of criminal history, history of philanthropy, forfeiture of his securities license, payment of restitution, and unlikeliness of recidivism. Dkt. 84.

Before sentencing, Mr. Buck had been released on his own personal recognizance with pretrial conditions, and he was compliant with all conditions of his release.

Mr. Buck is 66 years old. He is now incarcerated at FCI Terre Haute, and he has not had any disciplinary actions since he reported to the Bureau of Prisons ("BOP"). Dkt. 90-1 at 1. Mr. Buck participates in a service dog training program, works as a clerk, and has participated in a variety of classes offered at the prison. *Id.*  He began serving his sentence on March 21, 2019, and his current release date is projected to be January 20, 2022. *Id.* at 3.

On May 12, 2020, counsel appeared for Mr. Buck and filed the instant motion on his behalf.[1] Dkt. 88. The United States responded on May 27, 2020. Dkt. 90.

## II.
### DISCUSSION

In the motion, Mr. Buck seeks immediate release from prison under both (1) the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), 18 U.S.C. § 3624(c) and (2) the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i).

### i.     CARES Act

Mr. Buck's claim for immediate release cannot proceed under the CARES Act. The CARES Act provides:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the [BOP] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of [18 U.S.C. § 3624(c)(2)], as the Director deems appropriate.

134 Stat. at 516 (CARES Act § 12003(b)(2)). Thus, the CARES Act expands the powers of the Attorney General and the Director of the Bureau of Prisons, but not the courts. Accordingly, this Court lacks the authority to modify Mr. Buck's sentence under the CARES Act.

### ii.     First Step Act

Mr. Buck argues that the Court should order his immediate release from prison, with possible placement in home confinement, because his age and underlying health conditions (asthma and selective Immunoglobulin M deficiency) make him vulnerable to serious complications if he contracts COVID-19 and thereby create extraordinary and compelling reasons

---

[1] On June 26, 2020, Mr. Buck's trial attorney filed another "Motion for Compassionate Release or Placement in Home Confinement," dkt. 93, in which he appeared as a friend of the Court. The motion itself contained no argument but was seemingly filed for the purpose of drawing the Court's attention to a *New York Times* editorial article related to the rate of COVID-19 in prisons. The motion, dkt. [93], is **denied**.

warranting a sentence reduction. Dkt. 88. In response, the Government first argues that Mr. Buck waived his ability to seek relief in his plea agreement.[2] *Id.* It next argues that Mr. Buck has not presented extraordinary and compelling reasons for a sentence reduction because his asthma is mild, he has received no treatment for his selective Immunoglobulin M deficiency since the late 1990s or early 2000s, and there have not been any positive COVID-19 tests at FCI Terre Haute. Dkt. 90. The Government also argues that the § 3553(a) factors do not favor his release. *Id.*

18 U.S.C. § 3582(c) provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Mr. Buck submitted a written request for a reduction in sentence to his custodian on April 9, 2020. Dkt. 88-4. He has not received a reply to his request.[3] Dkt. 88 at 5. The Government concedes that Mr. Buck need not further exhaust his administrative remedies. Dkt. 90 at 4, n.2.[4]

---

[2] Because the Court has determined that Mr. Buck has not shown extraordinary and compelling reasons for a sentence reduction, the Court need not address whether the waiver in his plea agreement is enforceable.

[3] Mr. Buck surmises that the BOP has not yet acted on his request for relief due to a change in policy requiring priority for prisoners who have completed 50% of their sentence or are within 18 months of release. Mr. Buck will meet that requirement on July 20, 2020. Dkt. 88 at 5–6.

[4] The exhaustion requirement is not jurisdictional and can be waived by the Government. *See United States v. Jackson*, No. 2:15-cr-00013-JMS-CMM-1, Dkt. 137 (S.D. Ind. Apr. 28, 2020); *cf. United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) (holding that criteria for granting sentence reduction in § 3582(c)(2) are

Accordingly, the merits of the motion for compassionate release under § 3582 are ripe for the Court's consideration.

### A. Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[5] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is

---

not jurisdictional). Thus, even if Mr. Buck has not exhausted his administrative remedies, the Court considers the United States' concession to be a waiver of any further exhaustion.

[5]Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Mr. Buck is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[6] *Id.*, Application Note 1(D).

---

[6] The catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act to reflect the fact that defendants can now file motions directly in district court. "Accordingly, a majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] ... does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3[58]2(c)(1)(A).'" *United States v. Rodriguez*, __ F.Supp.3d __, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019)) (collecting cases). Such courts conclude that they have the "discretion to assess whether [a defendant] presents 'extraordinary and compelling reasons' for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement." *Id.* at *6; *see also United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 n.5 (D. Conn. Apr. 8, 2020). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Mr. Buck's motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

Mr. Buck does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

The Court concludes that it does not, despite the fact that, as in any community setting, it is difficult for prisoners to always follow social distancing guidelines. Dkt. 91 at 5. Mr. Buck is 66 years old, has asthma, and was at one time diagnosed with an Immunoglobulin M deficiency. *See* dkt. 88-2. Thus, he contends, he is at a higher risk of developing severe symptoms if he contracts COVID-19. Dkt. 88 at 3. The Court addresses each of Mr. Buck's risk factors.

**Asthma**

Mr. Buck is correct that the Centers for Disease Control have advised that "moderate-to-severe asthma may put people at higher risk from severe illness from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#asthma (last visited July 6, 2020). But Mr. Buck has produced no evidence that his asthma is moderate-to-severe. Asthma is classified as "moderate" or "severe" if symptoms occur on a daily basis or throughout the day and imposes some limitations on an individual's activities. U.S. Nat'l Inst. of Health, Nat'l Heart, Lung, and Blood Institute, "Asthma Care Quick Reference: Diagnosing and Managing Asthma," 2012, at 6, *available at* https://www.nhlbi.nih.gov/files/docs/guidelines/asthma_qrg.pdf. Mr. Buck's medical records show that his asthma is intermittent or mild. *See generally* dkt. 88-2.

Mr. Buck was diagnosed with asthma in 2011 when he saw a respiratory specialist for issues pertaining to "intermittent cough, congestion, and shortness of breath." *Id.* at 52–55. On March 15, 2011, he was specifically diagnosed with "adult-onset asthma aggravated by a

respiratory infection" and prescribed an inhaler. *Id.* at 54–55. On March 8, 2012, he returned to the respiratory specialist following an illness and was prescribed an Advair inhaler. *Id.* at 52–53.

Subsequently, he was prescribed an inhaler in March and April 2013 due to having acute bronchitis, cough, "asthma with acute exacerbation," and fatigue. *Id.* at 24–28.

The last time Mr. Buck was prescribed an inhaler appears to be on August 22, 2017. *Id.* at 13–18. At that time, Mr. Buck had been sick with a respiratory illness for several weeks, so he was prescribed the inhaler to be used "as needed." *Id.* at 13.

Although Mr. Buck's physician, Dr. James Rea, wrote a letter in which he opined that Mr. Buck's age and "chronic history of asthma with some pulmonary issues," including suspected bronchitis, "place him at greater risk for pulmonary complications if he were to contract COVID-19," Dkt. 88-2 at 2, Mr. Buck has not reported any issues with his asthma during his incarceration. Dkt. 90-2. He is not using an inhaler, *id.* at 16; his physical exam showed nothing remarkable about his respiratory system, *id.* at 22, 24; a chest x-ray was unremarkable, *id.* at 7, 59; and he has no work restrictions, *id.* at 39. In short, Mr. Buck does not suffer from "moderate to severe" asthma, and he has not shown that his intermittent asthma increases his risk for severe symptoms if he contracts COVID-19.

**Selective IgM Deficiency**

Mr. Buck also cites selective Immunoglobulin M deficiency, an immune system disorder, as a risk factor. *See* dkt. 88-2. Mr. Buck was diagnosed with this deficiency in the late 1990s. *Id.* at 4. According to one of his treating doctors, this deficiency "made him more prone to repeated respiratory tract infections." *Id.* However, Mr. Buck has received no treatment for this deficiency in recent years. In August 2012, a test for the condition showed a "normal pattern." *Id.* at 30–31, 169. A blood panel conducted in April 2019 showed that Mr. Buck's globulin count was within the

normal range. Dkt. 90-2 at 45 (noting 2.2 g/dl where normal range is 2.00 – 3.7 g/dl). Therefore, Mr. Buck has not established that he still suffers from this deficiency such that it would compromise his immune system if he were to contract COVID-19.

**Age**

Mr. Buck is 66 years old. Eight out of ten COVID-19-related deaths have been in adults 65 years and older. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 6, 2020). However, "[t]he greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.* Also, although his age is a legitimate risk factor, Mr. Buck has been in good health while incarcerated. Dkt. 90-2 (showing no health issues in past fourteen months besides a cough). The cases he relies on in support of his release, dkt. 91 at 17–18, are distinguishable, because the defendants in those cases identified other significant risk factors, such as diabetes, COPD, emphysema, end stage renal disease, and hypertension. Mr. Buck's age is not enough where he does not suffer from other known risk factors.

**Summary**

Mr. Buck's asthma is well-controlled to the extent that he does not even require the use of an inhaler. While he was diagnosed with selective IgM deficiency twenty years ago, he presents no data that indicates he still suffers from this deficiency; indeed, his records indicate normal levels. In addition, Mr. Buck has not tested positive for COVID-19 and is not incarcerated in a hotspot for COVID-19 infections.[7] On the record as it currently stands, the Court concludes that

---

[7] The United States Penitentiary in Terre Haute appears to have had ten inmates test positive for COVID-19. As of the writing of this Order, FCI Terre Haute (where Mr. Buck is incarcerated) has just one confirmed active case and three cases total. *See* https://www.bop.gov/coronavirus/ (last visited July 6, 2020). There is no indication that FCI Terre Haute is currently a hotspot or that it has not taken the proper steps to quarantine positive cases or to otherwise protect its inmates consistent with BOP's modified operations. *See* https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 6, 2020). Outside the prison, though, not only are cases increasing, but there is no guarantee that infected people will follow any "guidelines."

Mr. Buck has not shown that extraordinary and compelling reasons warrant a sentence reduction. Thus, his motion must be denied.

### B.  Danger to Any Other Person or to the Community

Although the Court need not address whether Mr. Buck poses a danger to any other person or to the community, the Court briefly addresses the issue so that the parties will be aware of the Court's position in the event that circumstances change and Mr. Buck files another motion for compassionate release. The Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) is the provision outlining the factors the Court must consider in determining whether a defendant should be detained pending trial. In turn, § 3142(g) provides:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>> **(2)** the weight of the evidence against the person;
>> **(3)** the history and characteristics of the person, including--
>>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

There is no evidence that Mr. Buck would be a danger to the safety of any person or to the community if released to supervised release with appropriate conditions. The Government acknowledges that Mr. Buck is not dangerous and is unlikely to recidivate. Dkt. 90 at 24. Mr. Buck has no criminal history prior to this offense. The Court released Mr. Buck on his own recognizance pending his sentencing hearing, and he complied with all conditions of his release. Also of note, his time with the BOP has been marked with good conduct and program participation. The Court concludes that Mr. Buck could be released to supervised release with appropriate conditions without posing a danger to any person or the community should future "extraordinary and compelling reasons" come to pass.

### III.
#### CONCLUSION

For the reasons stated above, Mr. Buck's Emergency Motion for Compassionate Release or Placement in Home Confinement, dkt. [88], and his additional Motion for Compassionate Release or Placement in Home Confinement, dkt. [93], are **denied**.

**IT IS SO ORDERED.**

Date:   7/7/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana


Distribution:

All Electronically Registered Counsel

11